RICHARD ABBEY et al. *v.* THE COMMERCIAL BANK OF NEW ORLEANS.

1. FEDERAL COURTS: LIENS OF JUDGMENTS RENDERED IN, GOVERNED BY LAWS OF THIS STATE.—The liens of judgments rendered by the Federal Courts holden in this State, are subject to the operation of the Statute of Limitations, enacted by the legislature, and will be extinguished by the lapse of time therein prescribed.

2. BANKRUPTCY: FRAUDULENT CONVEYANCE NOT IN CONTEMPLATION OF BANKRUPTCY, NO CAUSE FOR ANNULLING CERTIFICATE OF DISCHARGE.—The assignee in bankruptcy, under the Act of 1841, succeeds only to the rights of the bankrupt, and he can maintain no action to recover property, which the bankrupt himself could not have maintained in case there had been no decree in bankruptcy; except in certain cases of fraudulent payments and transfers of property made after the passage of the act, and in contemplation of bankruptcy, as specified in the second section thereof; and hence, the failure of the bankrupt to return, in his schedule, property which he had conveyed before the passage of the act, by voluntary gift in fraud of the rights of his creditors, is no ground for annulling his certificate of discharge.

3. HIGH COURT: RES ADJUDICATA.—The decision of this court, upon a demurrer to a bill in equity, is not an adjudication of matters set up as a defence to the bill by a plea which had not then been decided by the court below; and which was, therefore, not involved, nor considered by this court, in the decision on the demurrer.

APPEAL from the District Chancery Court, at Yazoo city. Hon. George W. Dougherty, vice-chancellor.

*Marshall* and *Miller,* for appellants.

1. The complainants' judgment has no lien. 1st. It is barred by the Statute of Limitations. 2d. Abbey only had an equity of

redemption, which cannot be sold under execution, nor is it the subject of the lien of a judgment.   *Thornhill* v. *Gilmer*, 4 S. & M. 153; *Wolfe* v. *Donnell*, 13 Ib. 103; *Boarman* v. *Catlett*, Ib. 149; *Henry* v. *Fullerton*, Ib. 731; *Baldwin* v. *Jenkins*, 1 Cushm. 206; *Cantzon* v. *Dorr*, 5 Ib. 245; *Marlow & Hoskins* v. *Johnson*, 2 George, 128.

2. Conceding the conveyance and arrangement to be fraudulent, which is denied, yet it divested all the right of Abbey to the property; and not being made in contemplation of bankruptcy, but before the act was passed, the assignee succeeded to no rights in it, and it was therefore not Abbey's duty to return it in his schedule, as was expressly decreed in *Porter* v. *Douglass*, 5 Cushm. 439.

*R. B. Mayes*, on same side, filed an elaborate brief.

*Gibb* and *Bowman*, and *Fulton Anderson*, for appellee, filed elaborate briefs.

HANDY, J., delivered the opinion of the court.

This bill was filed in the Middle District Chancery Court, by the appellees, judgment creditors of Richard Abbey, to subject to their debt certain property alleged to have been conveyed by Abbey, in fraud of his creditors.

The material facts appearing by the pleadings are, that in May, 1839, the appellees recovered a judgment in the Circuit Court of the United States, held in this State, for a large sum of money, on which executions had been regularly issued until February, 1851, and returned *nulla bona;* that in June, 1837, Abbey and wife executed a mortgage to the Agricultural Bank, on a tract of land, and a large number of slaves, to secure a large debt due the bank, upon which there was a consent decree of foreclosure rendered at December term, 1840, and under that decree, that the Agricultural Bank, by agreement with Abbey, became the purchaser of the property; but that Abbey continued in possession after the sale, and with the crops paid nearly all the debt due the bank; and that this was done in pursuance of an agreement in writing made between Abbey and the bank, that the bank should bid off the property, at the sale under the decree, and upon payment of the debt due; that

the bank should convey the property to Abbey's wife and daughter; that in July, 1842, the bank assigned her interest in the property, and her debt then unpaid, to Cochran & Henderson, who, in April, 1848, executed a deed, reciting the agreement between Abbey and the bank, and the payment of the debt by means of the crops and a sale of part of the property, and conveying the property to the appellants, the wife and daughter of Abbey. This is charged to be a fraudulent arrangement, for the purpose of giving Abbey an opportunity to pay the debt by means of the crops upon long time, to secrete and secure it against other creditors, and to have it conveyed to his wife and daughter after the payment of the debt to the bank; and that it was, in effect, a voluntary gift by an insolvent debtor to his wife and daughter.

The bill further states that in April, 1838, the same property was conveyed by Abbey and wife to one Miller, in trust, to secure certain debts, some of which constitute a large portion of the debt upon which the complainant's judgment was founded; that although this trust deed was entered satisfied, it was fraudulently procured by Abbey to be so entered, and was not in fact satisfied.

The answer admits the continued possession of Abbey after the sale under the mortgage decree, but states that it was as agent for the bank, and upon wages to be paid by the bank; admits in effect the agreement to convey to Abbey's wife and daughter, and states that the consideration for it was, as a compensation for his wife's dower in the property which she had conveyed by the mortgage; denies all fraud in the transaction, and all collusion with the bank in procuring the decree to sell the property under the mortgage; denies that any of the debts secured in the trust deed to Miller constitute a part of the complainant's judgment, or that the entry of satisfaction of the deed was obtained by fraud; and pleads the certificate of discharge of Abbey as a bankrupt, granted on the 20th of February, 1843, in bar of the complainant's claim.

An amended bill states that Abbey did not surrender in his schedule as a bankrupt any interest in the property in controversy, and that he carefully concealed the arrangement made with the bank from his creditors, and charges that the pretence that Abbey remained in possession as agent and overseer is false, and that he never received any compensation on that account.

The answer to this denies that the discharge in bankruptcy was obtained by fraud or concealment, and states that he had no interest in the property when he made his application as a bankrupt, and therefore did not insert it in his schedule.

Upon the hearing, a decree was made, subjecting the property to the payment of the judgment, from which this appeal was taken.

The first and main question presented is, whether the discharge in bankruptcy is a bar to the judgment against Abbey, and to the bill filed in this case to enforce it.

Under the rules held by this court the *lien* of the judgment had expired under the operation of the Statute of Limitations of 1844, and therefore there was no *lien* preserved under the provisions of the Bankrupt Act, and which could be enforced. The certificate, therefore, must operate as a bar to the judgment and all proceedings to enforce it, unless it appears by the pleadings and proof that it was obtained by fraud and in violation of the provisions of the Bankrupt Act.

The ground upon which the certificate is attempted to be impeached is, that Abbey committed a *wilful concealment* of his property in failing to insert in his schedule of property and effects as a bankrupt, his interest in the property purchased by the Agricultural Bank, which is alleged to be an equity of redemption.

The condition of the property appears to be this: Abbey had executed a mortgage to the bank, under which the property was about to be sold. It was agreed between him and the bank that the bank should purchase it, and give time for paying the debt due by means of the crops to be raised upon it, and by sale of portions of the property; and after the payment of the debt, the bank was bound by a written agreement to convey it to Abbey's wife and daughter, which agreement was carried out by Henderson & Cochran, to whom the bank transferred the debt held by her and her title to the property. This is stating the transaction as strongly against the interest of the appellants as the record would justify.

The question for consideration upon this is, not whether it was an arrangement securing the property to Abbey's wife and child in fraud of his creditors, but whether, after the purchase of the bank and the agreement made, he retained such an interest in the property as he could use to his benefit and assert against the claim of

his wife and daughter or the bank ; such an interest as his assignee in bankruptcy could maintain against his wife and daughter. Conceding the arrangement to be fraudulent on his part, and such that his creditors might, before his discharge in bankruptcy, have set it aside as voluntary and fraudulent as to them, yet it was conclusive upon him with reference to the rights of his wife and daughter; and as the legal right passed to them, though by a fraudulent act on his part, and his right as against them was concluded thereby, he could not be said to have made a wilful concealment of any interest of his in the property. The arrangement was made before the passage of the Bankrupt Act, and could not be said to have been made in contemplation of bankruptcy. Unless, therefore, there was an interest remaining in Abbey after the arrangement made with the bank, he had nothing which he could wilfully conceal in fraud of the Bankrupt Act, because he had nothing which could pass to his assignee. Hence this case comes fully under the rule held by this court in *Porter* v. *Douglass*, 27 Miss. 379; and the transaction must be regarded, as it is charged to be in the complainant's bill, as a voluntary gift of the interest of an insolvent debtor to his wife and daughter, but which divested him of all right or interest in the property, so that his failure to surrender it in his schedule in bankruptcy cannot be considered as a wilful concealment of his property. And it follows that the certificate cannot be avoided on that ground, and that it is a bar to the judgment.

It is, however, insisted in behalf of the appellee, that the effect of the decision of this case when it was heretofore here on appeal from the order of the court below overruling the demurrer to the bill, is an adjudication that the discharge in bankruptcy was not a bar to the bill. This is founded in a misapprehension. When the case was formerly here, the only questions presented upon demurrer were those which appeared by the face of the bill. The defence of Abbey's discharge in bankruptcy was set up by plea, which, when the case was formerly here, had not been decided, and was therefore neither invalid nor considered by us in the former decision. Nor could it then have been considered; for it involves the question of fact, whether, under the circumstances of the discharge as shown by the evidence touching the point of fraudulent and wilful concealment of his property by the bankrupt, there was in law such a

wilful concealment, in fraud of the Bankrupt Act, as will avoid the certificate. The former decision, therefore, does not extend to the question of the validity of the discharge in bankruptcy.

Another ground of relief set up in the bill, is the trust deed to Miller, made by Abbey and wife, in 1838, which, it is alleged, covers a large portion of the debt upon which the judgment here sought to be enforced is founded. This allegation of the bill is denied by the answer, and it does not satisfactorily appear to be sustained by proof. But it appears that this deed was entered satisfied of record, and the bill alleges that this was fraudulently done by the procurement of Abbey. This allegation is denied in the answer, and the record shows no evidence to sustain it. It is, therefore, clear that the decree cannot be sustained on this ground of relief.

Under these views of the case, the decree must be reversed, and the bill dismissed; which is ordered accordingly.

This case was formerly before this court, and is reported in 31 Miss. R. 434–437.